UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN GARDNER, | Case No. 14-cv-02024-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS THIRD CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200** |
| SAFECO INSURANCE COMPANY OF AMERICA, | |
| Defendant. | **Dkt. No. 4** |

## I.      INTRODUCTION

In this diversity case, Plaintiff Alan Gardner ("Gardner") alleges that Safeco Insurance Company of America ("Safeco") failed to adequately defend Safeco in a state court law suit in violation of the home insurance policy Gardner had purchased from Safeco.  Gardner asserts four causes of action against Safeco for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of California Business & Professions Code section 17200 ("UCL"), and declaratory relief.  After removing this case to federal district court, Safeco filed a Motion to Dismiss the UCL claim (hereafter, "Motion").  The Court finds this Motion suitable for decision without oral argument pursuant to Local Rule 7-1(b), and vacates the hearing scheduled on June 20, 2014.  For the reasons stated below, the Motion is GRANTED and the UCL claim is DISMISSED WITH LEAVE TO AMEND.[1]

## II.      BACKGROUND

Gardner purchased from Safeco an insurance policy titled Quality-Plus Home Owners Policy No. 0A2009961 and an Umbrella Policy No. 2012610 (hereafter, "the Policy").  Dkt. No.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1-1 at 3-17 ("Compl.") ¶ 7.  On January 14, 2008, Gardner was named as a defendant in California Superior Court, County of Contra Costa, Case No. MSC 08-00065 (hereafter, "the Contra Costa action").  *Id*. ¶ 8.

Gardner tendered the case to Safeco in late January 2008, but Safeco "denied coverage pending an investigation." *Id*. ¶ 9.  Gardner states that he immediately retained counsel in an effort to convince Defendant to honor the Policy and accept coverage.  *Id*. ¶ 9.

On February 27, 2008, Safeco wrote a letter to Gardner indicating that Safeco was investigating and analyzing the Contra Costa action for potential defense and indemnification.  *Id*. ¶ 10; *see also* Compl., Exh. B.  In the letter, Safeco wrote that the investigation and analysis are being undertaken with a full reservation of rights.  *Id*.  On May 23, 2008, Safeco's counsel wrote a letter to Gardner's personal counsel indicating that it would defend the Contra Costa action, but also indicating that the Policy "may not cover all claims made in the [Contra Costa action] and that [Safeco] intends to reserve its rights to refuse payment of uncovered claims." *Id*. ¶¶ 11-12; *see also* Compl., Exh. C.

Gardner states that on June 10, 2008, Safeco filed an Answer and Cross-Claim on behalf of Gardner in the Contra Costa action.  *Id*. ¶ 15.  Gardner alleges that Safeco, "through its words and conduct, intentionally led Plaintiff to believe that it was prosecuting his affirmative claims in the underlying Contra Costa action, as part of an overall litigation strategy." *Id*.  Gardner states that he relied on said words and conduct to his detriment.  *Id*.

Gardner alleges that during the course of litigation, Safeco challenged the development of pertinent facts to take the Contra Costa action out of coverage under its Policy.  *Id*. ¶ 14.  For example, Gardner states that for the defamation claim, the attorney had a duty to Safeco to establish that "alleged defamatory remarks were based on information during [Gardner]'s employment, thus triggering the business pursue exclusion" from coverage under the Policy.  *Id*.  At the same time, the attorney had a duty to Gardner to establish that his "alleged defamatory remarks were not based on information during employment, hence avoiding the business pursuit exception." *Id*.  An excerpt from the letter Safeco wrote on January 12, 2011 provides further insight into these alleged conflicts:

> This policy provides coverage for bodily injury or property damage
> caused by an occurrence, not otherwise excluded. As I understand
> it, the remaining causes of action include extortion and defamation.
> Mr. Roeder is also seeking punitive damages. Punitive damages are
> not covered by an insurance policy as a matter of law. Damages
> arising out of extortion do not qualify as a bodily injury or property
> damage caused by an occurrence. As to defamation, if the
> defamatory remarks were based on information during employment
> with Great Oaks, there is no indemnity coverage due to a business
> pursuit exclusion in Mr. Gardner's Policy.

Compl. ¶ 18.

Gardner states that in December 2010, Safeco hired new counsel from the McNamara Law Firm in San Francisco even though Gardner objected due to an unrelated conflict of interest. Compl. ¶ 16. Gardner again sought assistance of personal counsel and filed a motion in the Contra Costa action to disqualify the McNamara Law Firm. *Id.* ¶ 20. Gardner withdrew the motion once Safeco agreed that it would not use the McNamara law firm, and law firm Fredrickson Mazeika and Grant began to represent Gardner and Safeco in the case. *Id.* ¶¶ 21-22.

Gardner alleges that prior to the dispute regarding the McNamara law firm, Gardner had asked Defendant for several status reports as well as a complete copy of his file. *Id.* ¶ 19. Gardner states that he was not given a copy of his file until sometime in February 2011, and even then, the file was "intentionally disorganized, resembling a practical joke of the card game of 52 pick-up." *Id.* Gardner states that after complaining, Safeco told him that several documents were "missing" or had been "lost." *Id.*

Gardner states that in the summer of 2011, he learned that despite Safeco's comments to the contrary, "the Contra Costa action had been allowed to remain in a derelict state, substantially un-worked for over three years between May 23, 2008 and summer 2011, in violation of the Policy and in violation of Defendant Safeco's duty to its insured." Compl. ¶ 23. Gardner states that Safeco failed to: (1) hire an investigator; (2) interview witnesses and take witness statements; (3) notice a single deposition; (4) propound meaningful discovery; (5) file a motion to compel when the one set of scant discovery was not answered but by blanket objections; (6) undertake a meaningful settlement negotiation; (7) respond to Gardner's many requests for information and

updates; and (8) prosecute Gardner's cross-claim.  *Id.*

Gardner states that Safeco's omissions in this regard were in an effort to save time, money and resources.  *Id.* ¶ 24.  Gardner alleges that Safeco knew the Contra Costa action would be expensive to defend, owing in large part to the amount of motion work, discovery and investigations that needed to be done, including depositions.  *Id.* ¶ 25.  Gardner alleges that Safeco controlled and directed litigation in such a way as to maximize the savings for itself instead of the interests of Gardner.  *Id.*

Gardner states that in mid-summer of 2011, he retained independent counsel for the Contra Costa action.  When Gardner's independent counsel voiced concerns over the large amount of work that had not been done, Safeco allegedly responded with a Reservation of Rights Letter (that was drafted on December 22, 2011) indicating that "[i]t is Safeco's position that some of the claims being made against [Gardner] may not be covered."  *Id.* ¶ 26.  Gardner alleges that the Reservation of Rights Letter was the first time Safeco described claims of allegations in the underlying action or referenced the specific policy provisions that Safeco contended precluded coverage.  *Id.* ¶ 27.  Gardner further alleges that the Reservation of Rights Letter fails to advise Gardner that there is an actual and significant conflict of interest, and failed to inform Gardner that he was entitled to *Cumis* counsel.  *Id.*

On or about July 30, 2012, Gardner's independent counsel again raised concerns about Safeco's direction of litigation in the Contra Costa action.  *Id.* ¶ 28.  In response, Safeco threatened that if Gardner did not agree to waive the California statutory requirement that trial commence within five years of filing a case, *see* California Code of Civil Procedure § 583.310, then Safeco would pull its coverage and find that Gardner was "non-cooperative" under the Policy.  *Id.*

Gardner states that as a result of Safeco's conduct, the Contra Costa action has been allowed to languish for over six years.  *Id.* ¶ 29.  The Contra Costa action was set for trial to start on April 28, 2014.  *Id.* ¶ 30.

On April 1, 2014, Gardner filed the instant case against Safeco in California Superior Court, County of Contra Costa.  In the Complaint, Gardner asserts four causes of action for (1)

4

1    breach of contract, (2) tortious breach of the implied covenant of good faith and fair dealing, (3)

2    unfair business practices in violation of California Business & Professions Code § 17200

3    ("UCL"), and (4) declaratory relief.

4         Gardner alleges that Safeco violated the UCL through its "overall scheme to act collusively

5    in minimizing Safeco's payment of benefits to Plaintiff and others at the expense of Plaintiff and

6    others," and that "Safeco's conduct … constitutes an illegal pattern and practice so pervasive as to

7    form a general business practice which is forbidden by [the UCL]." *Id.* ¶ 49.  Under the UCL

8    claim, Gardner "seeks injunctive relief prohibiting Defendant Safeco's continued violations of the

9    above described unlawful conduct which constitutes an unfair business practice." *Id.* ¶ 50.

10    Gardner further seeks "restitutionary relief in the form of Defendant Safeco's disgorgement of

11    profits gained through their unlawful and unfair business practices." *Id.*

12         On May 2, 2014, Safeco removed this case to federal district court on basis of diversity

13    jurisdiction.  *See* Dkt. No. 1 (Notice of Removal).  On May 9, 2014, Safeco filed the instant

14    Motion to dismiss the third cause of action for a violation of the UCL.[2]  Dkt. No. 4.

15    **III.**     **LEGAL STANDARD**

16         A complaint may be dismissed for failure to state a claim for which relief can be granted

17    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 12(b)(6).  "The

18    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

19    complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Under Rule

20    12(b)(6), a court may dismiss a clam that is grouped together with other claims in a single cause of

21    action, without dismissing the entire cause of action. *Hill v. Opus Corp.*, 841 F.Supp.2d 1070,

22    1082 (C.D. Cal. 2011).

23         In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of

24    material fact as true and construe(s) them in the lights most favorable to the non-moving party."

25    *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).  The complaint need not

26    contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that

27

28

---

[2] Defendant does not move to dismiss any other cause of action asserted in the complaint.

United States District Court
Northern District of California

5

1   is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v.*

2   *Twombly*, 550 U.S. 544, 547 (2007)).  For a claim to survive a motion to dismiss, "the factual

3   content, and reasonable inferences from that content, must be plausibly suggestive of a claim

4   entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)

5   (quotations omitted).

6   **IV.   DISCUSSION**

7          Safeco contends the UCL claim should be dismissed under Federal Rule of Procedure

8   12(b)(6) because Gardner fails to plead sufficient facts which show that Safeco's conduct violated

9   the unlawful, unfair or fraudulent prongs of the UCL.  Safeco further argues that Gardner's UCL

10  claim fails because "it is based *solely* on his individual and particularized claim."  Motion at 7.  In

11  addition, Safeco contends that Gardner does not plead facts that warrant the equitable remedies

12  available under the UCL because Gardner has an adequate remedy at law, and because the

13  monetary relief sought does not qualify as restitution.

14         **A.     Whether Gardner Alleges Sufficient Facts to State a UCL Claim**

15         California's UCL prohibits "unfair competition," which is defined as any "unlawful, unfair

16  or fraudulent business act or practice….."  Cal. Bus. & Prof. Code § 17200.  Because the text of

17  the UCL definition is disjunctive, a plaintiff may establish a violation of the UCL under any one

18  of three prongs, which operate independently of each other.  *State Farm Fire & Cas. Co. v.*

19  *Superior Court*, 45 Cal.App.4th 1093, 1102 (1996).  Gardner does not specify which prong he

20  brings his UCL claim under, and Safeco contends the UCL claim fails under all three.

21              **1.     Unlawful**

22         "Section 17200 'borrows' violations from other laws by making them independently

23  actionable as unfair competitive practices."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

24  4th 1134, 1143 (2003).  To state a cause of action based on an "unlawful" business act or practice

25  under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.

26  *People v. McKale*, 25 Cal.3d 626, 635 (1979).  California Courts have held that "[t]he 'unlawful

27  practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal,

28  federal, state or municipal, statutory, regulatory, or court-made."  *Saunders v. Superior Court*, 27

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cal.App.4th 832, 838–39 (1994).  "[A]n 'unlawful' business practice actionable under the UCL is

2    one that violates an existing law, including case law...."  *Cmty Assisting Recovery, Inc. v. Aegis*

3    *Sec. Ins. Co.*, 92 Cal.App.4th 886, 891 (2001).

4         The Ninth Circuit has permitted a plaintiff to bring a UCL claim that was premised upon a

5    civil tort.  *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1107 (9th Cir. 2007).  The

6    court held that the plaintiff had "adequately alleged that [the defendant] violated the UCL because

7    [the plaintiff] adequately alleged that [the defendant] engaged in an 'unlawful' business act or

8    practice, ... namely, intentional interference with [the plaintiff's] employment contracts."  *Id.*

9    Courts in this district have also declined to dismiss UCL claims based on the "unlawful" prong

10   with they were based on the allegation of a civil tort.  *See, e.g.*, *Cortez v. Global Ground Support,*

11   *LLC*, No. 09-4138 SC, 2009 WL 4282076, at *3 (N.D. Cal. Nov. 25, 2009) (declining to dismiss

12   "a UCL claim based on the manufacture and sale of negligently designed products.").  At least one

13   court in this District has held that a claim for breach of the covenant of good faith and fair dealing

14   may serve "as a predicate for § 17200 liability."  *Gabana Gulf Distribution, Ltd. v. GAP Int'l*

15   *Sales, Inc.*, No. 06-2584 CRB, 2008 WL 111223 (N.D. Cal. Jan. 9, 2008) *aff'd*, 343 F. App'x 258

16   (9th Cir. 2009) (noting that "[a]lthough the state of § 17200 jurisprudence is in rapid flux,

17   California courts have not yet foreclosed common law theories–such as breach of the covenant of

18   good faith–as a basis for actions pursuant to § 17200.").

19        Safeco has not challenged the factual allegations supporting Gardner's claim for tortious

20   breach of the covenant of good faith and fair dealing.  Assuming *arguendo* the breach of covenant

21   claim is sufficient as currently pled, Gardner has also asserted a claim under the "unlawful" prong

22   of the UCL.  *O'Connor v. Uber Technologies, Inc.*, No. 13-3826 EMC, 2013 WL 6354534, at *16

23   (N.D. Cal. Dec. 5, 2013) (noting that claims that survive a motion to dismiss "also survive as

24   predicate acts under the UCL claim.").  Thus, to the extent Gardner's UCL claim is based on the

25   unlawful prong, Safeco has not presented an adequate justification for dismissal.

26              **2.    Unfair**

27        "Because the California Supreme Court has not established a definitive test to determine

28   whether a business practice is unfair, 'a split of authority developed among the Courts of Appeal,

which have applied three different tests for unfairness in consumer cases.' " *Uber Technologies*,

2013 WL 6354534, at *16-17 (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App. 4th

247, 256 (2010).  The court in *Drum* described these tests:

> The test applied in one line of cases ... requires that the public policy
> which is a predicate to a consumer unfair competition action under
> the "unfair" prong of the UCL must be tethered to specific
> constitutional, statutory, or regulatory provisions.
> ....
> The test applied in a second line of cases is whether the alleged
> business practice is immoral, unethical, oppressive, unscrupulous or
> substantially injurious to consumers and requires the court to weigh
> the utility of the defendant's conduct against the gravity of the harm
> to the alleged victim.
> ....
> The test applied in a third line of cases draws on the definition of
> "unfair" in section 5 of the Federal Trade Commission Act (15
> U.S.C. § 45, subd. (n)), and requires that (1) the consumer injury
> must be substantial; (2) the injury must not be outweighed by any
> countervailing benefits to consumers or competition; and (3) it must
> be an injury that consumers themselves could not reasonably have
> avoided.

*Drum*, 182 Cal.App.4th at 256-57 (internal citations and quotations omitted).

Gardner has not pled any allegations that would show Safeco's conduct was unfair under

any of the foregoing tests.  Gardner has not identified any "specific constitutional, statutory, or

regulatory provisions" that prohibit Safeco's alleged conduct.  *Id*.  Nor has Gardner alleged

sufficient facts to show that Safeco's conduct is "immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers," or that he suffered a substantial injury that he "could not

reasonably have avoided."  *Id*.

### 3.    Fraudulent

Under the UCL, a "fraudulent" business act or practice is one in which members of the

public are likely to be deceived.  *Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App. 4th 1213, 1223

n.8 (2010) (citations omitted).  " 'Fraudulent,' as used in the statute, does not refer to the common

law tort of fraud but only requires a showing that members of the public 'are likely to be

deceived.'"  *Olsen v. Breeze*, 48 Cal.App.4th 608, 618 (1996).  UCL claims premised on

fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of

Civil Procedure.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The pleadings

United States District Court
Northern District of California

1   must "be specific enough to give defendants notice of the particular misconduct so that they can

2   defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–*

3   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted).

4          Safeco contends that Gardner failed to identify any particular instance of fraudulent

5   conduct.  In the Complaint, Gardner alleges that Safeco, "through its words and conduct,

6   intentionally led Plaintiff to believe that it was prosecuting his affirmative claims in the underlying

7   Contra Costa action, as part of an overall litigation strategy."  Compl. ¶ 15.  Gardner also alleges

8   that that he relied on Safeco's words and conduct to his detriment.  *Id.*  These allegations are

9   insufficient in light of Rule 9(b)'s heightened pleading standards.  Nor do these conclusory

10  allegations show that Safeco engaged in a fraudulent business act or practice that was likely to

11  deceive the public.

**B.     Whether Gardner Must Plead Facts Showing that Safeco Engaged in an
Ongoing Practice that Affects the General Public**

14         Safeco argues that a UCL claim "must relate to the general public and not just the

15  individual plaintiff on whose behalf the action is brought."  Motion at 7.  In support of this

16  argument, Safeco cites the California Supreme Court's decision in *State of California ex rel. Van*

17  *De Kamp v. Texaco, Inc.*, where the court wrote that the UCL "is directed at 'ongoing wrongful

18  business conduct' … the practice requirement envisions something more than a single

19  transaction."  46 Cal.3d 1147, 1169-70 (1988) (affirming dismissal of a UCL claim because "[t]he

20  complaint attacks only the merger, and no ongoing conduct….").

21         In response to the *Texaco* decision, however, the California Legislature amended the UCL

22  in 1992 to provide that "unfair competition shall mean and include *any* unlawful, unfair or

23  fraudulent business *act* or practice…."  *United Farm Workers of Am., AFL-CIO v. Dutra Farms*,

24  83 Cal.App.4th 1146, 1163 (2000) (quoting Cal. Bus. & Prof. Code § 17200 (emphasis added)).

25  The California Supreme Court has explicitly recognized that the 1992 amendments overruled the

26  *Texaco* decision.  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 570 (1998); *see*

27  *also CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007)

28  ("A business act or practice need not be an ongoing pattern of conduct.").  Accordingly, this

United States District Court
Northern District of California

9

1    argument has no merit.

2              **C.    Whether Gardner May be Entitled to Restitution**

3            As a remedy for his UCL claim, Gardner "seeks restitutionary relief in the form of

4    Defendant Safeco's disgorgement of profits gained through their unlawful and unfair business

5    practices." Compl. ¶ 50.  In the Motion, Safeco contends that Gardner's request for

6    nonrestitutionary disgorgement must fail because Gardner seeks to recover money which was not

7    paid to Safeco and to which Gardner holds no vested ownership interest.  Motion at 9.  In the

8    Opposition, Gardner states his allegations provide "a basis for equitable damages," as the

9    Complaint alleges "that Safeco refused to retain proper representation for plaintiff" and "further

10   states that plaintiff was therefore forced to retain his own attorneys."  Opposition at 5-6.  Gardner

11   contends that "[b]ecause Safeco refused to accept billing from plaintiff's individual attorneys,

12   plaintiff was let with the bill (and still is)."  *Id.*

13           The California Supreme Court has held that "disgorgement of money obtained through an

14   unfair business practice is an available remedy in a representative action *only to the extent* that it

15   constitutes restitution."  *Korea Supply*, 29 Cal.4th at 1149 (emphasis added).  The court defines an

16   order for restitution as one "compelling a UCL defendant to return money obtained through an

17   unfair business practice to those persons in interest from whom the property was taken, that is, to

18   persons who had an ownership interest in the property or those claiming through that person."

19   *Korea Supply*, 29 Cal.4th at 1149 (2003) (quoting *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.4th

20   116, 126-27 (2000)).  Thus, "[u]nder the UCL, an individual may recover profits unfairly obtained

21   to the extent that these profits represent monies given to the defendant *or* benefits in which the

22   plaintiff has an ownership interest."  *Korea Supply*, 29 Cal.4th at 1149 (emphasis added).

23           The remedy of restitution does not allow Gardner to recover the money he paid to his

24   independent counsel to defend him in the Contra Costa action.  This money was not paid to

25   Safeco, and thus does not represent "monies given to the defendant" nor "benefits in which the

26   plaintiff has an ownership interest."  *Korea Supply*, 29 Cal.4th at 1149.  In *Sanbrook v. Office*

27   *Depot, Inc.*, the plaintiff sought to recover $615 in "restitution" from Office Depot, which was the

28   amount she paid to a third-party repair specialist after Office Depot refused to honor her warranty

United States District Court
Northern District of California

10

1    and repair her computer.  No. 07-5938 RMW, 2008 WL 1994884, at *4-6 (N.D. Cal. May 5,

2    2008).  Similar to Gardner, the plaintiff in *Sanbrook* argued that she was "entitled to restitution in

3    the amount of the services denied by Office Depot, which, she contends, is equal to the cost of

4    service she was forced to obtain from a third party."  *Id*. at *5.  The court held that the plaintiff

5    could not recover in restitution because "[t]he money Sanbrook paid for third party repair is not

6    money that *[the defendant] obtained* through any alleged unfair business practice."  *Id*. at *5

7    (emphasis added).

8           Moreover, Gardner does not have any vested interest in the legal services to which he

9    claims he is entitled.  "While the concept of restitution, as used in Section 17200, is broad enough

10   to allow a plaintiff to recover money or property in which he has a 'vested interest,' such as earned

11   [but unpaid] wages," Gardner has nothing more than an "expectancy interest" in having Safeco

12   provide his legal defense.  *G & C Auto Body Inc. v. Geico Gen. Ins. Co.*, No.06-4898 MJJ, 2007

13   WL 4350907 (N.D. Cal. Dec. 12, 2007) ("Plaintiffs may have a vested interest in the amounts

14   directly owed by car owners for work already performed, but they do not have a vested ownership

15   interest in insurance proceeds that Defendants have declined to pay to their policyholders.").

16          Although Gardner may not recover the money he paid to a third party for legal

17   representation under a restitution theory, he may be entitled to "monies given to the defendant or

18   benefits in which the plaintiff has an ownership interest."  *Korea Supply*, 29 Cal.4th at 1149.

19   Safeco narrowly frames Gardner's request for restitution as limited to the attorneys' fees he paid

20   to his independent lawyers, but Gardner's claim for restitution is much broader.  *See* Compl. ¶ 51

21   (seeking restitution for Safeco's "unlawful and unfair business practices").  To the extent Gardner

22   seeks restitution for the money he gave to Safeco when purchasing the Policy, or for any other

23   benefit in Safeco's possession to which Gardner holds an ownership interest, Gardner may be

24   entitled to recover in restitution.

25          **A.     Whether Gardner has an Adequate Remedy at Law**

26          The remedies available under the UCL are generally limited to the equitable remedies of

27   restitution and injunctive relief.  *Madrid v. Perot Systems Corp.*, 130 Cal. App.4th 440 (2005).

28   Thus, relief under the UCL "is subject to fundamental equitable principles, including inadequacy

United States District Court
Northern District of California

1    of the legal remedy." *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236,

2    1249 (1998).

3            Safeco contends that Gardner's UCL claim must fail because Gardner cannot show that

4    he has an inadequate remedy at law.  In the Complaint, Gardner alleges:

             Plaintiff and other California residents who purchased insurance
6            policies from Defendant Safeco have no adequate remedy at law to
             protect themselves from each of Defendant Safeco's pervasive
7            fraudulent and unfair business practices.  A remedy at law is
             inadequate because insureds must initiate litigation after Defendant
8            Safeco's unlawful conduct has occurred.  Once a remedy at law
             matures, each of Defendant Safeco's actions will have already
9            violated California law by compelling insureds, including Plaintiff,
             to initiate litigation to obtain insurance benefits.
10

11    Compl. ¶ 51.

12           The fact Gardner must "initiate litigation to obtain insurance benefits," Compl. ¶ 51, does

13    not mean Gardner lacks an adequate remedy at law.  Rather, the money damages available to

14    Gardner in the event he prevails on his claims for breach of contract and breach of the implied

15    covenant of good faith and fair dealing may provide an adequate remedy.  *Rhynes v. Stryker*

16    *Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *3-4 (N.D. Cal. may 31, 2011) (dismissing UCL

17    claim because "money damages will provide Plaintiffs with an adequate legal remedy if they

18    prevail on their products liability claims.").  Notably, "courts have dismissed UCL claims in

19    insurance coverage cases where the plaintiff's proper remedy is to sue for breach of contract to

20    recover any benefits that are due under the policies."  *McAdam v. State Nat. Ins. Co., Inc.*, No.

21    12-1333, 2012 WL 4364655, at *2 (S.D. Cal. Sept. 24, 2012) (dismissing UCL claim involving

22    unpaid insurance proceeds because plaintiff could recover benefits "through his breach of

23    contract claim.");  *Allstate Ins. Co. v. Barnett*, No. 10-0077 EMC, 2011 WL 2415383, at *9

24    (N.D. Cal. June 15, 2011) (dismissing UCL claim in part because breach of contract claim

25    regarding home owners insurance policy provided adequate remedy); *Stewart v. Life Ins. Co.*,

26    388 F.Supp.2d 1138, 1144 (E.D. Cal. 2005) (dismissing UCL claim because the "breach of

27    contract claim [for failure to pay life insurance benefits] will provide any benefits [plaintiff] is

28    due.").  Thus, to the extent the UCL claim is based on the allegation that Safeco refuses to pay

United States District Court
Northern District of California

12

for Gardner's attorneys' fees due under the Policy, there is an adequate remedy at law.

Gardner contends he has no adequate remedy at law, but fails to explain how his alleged injury cannot be remedied by the payment of damages.  Accordingly, the UCL claim will be dismissed with leave to amend for Gardner to add allegations which show that a legal remedy is inadequate to redress *his own* injury in this matter.

To the extent Gardner seeks injunctive relief on behalf of others, the request fails because Gardner has not brought this case as a class action.  The 2004 amendments to the UCL provide that a party seeking relief on behalf of the others must satisfy the class action requirements of section 382 to the California Code of Civil Procedure.  *Rhynes*, 2011 WL 2149095, at *4; *see also* Cal. Bus. & Prof. Code § 17203 ("Any person may pursue representative claims or relief on behalf of others only if the claimant … complies with Section 382 of the Code of Civil Procedure…..").  Section 382 provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."  Cal. Civ. Proc. Code § 382.  Gardner's allegations do not demonstrate that the question in this case "is one of a common or general interest, of many persons," but rather relate only to Gardner's personal dealings with Safeco and his own alleged injury.  *Id*.

**V.      CONCLUSION**

For the foregoing reasons, the Motion is GRANTED and the third cause of action for a violation of California Business & Professions Code § 17200 is DISMISSED WITH LEAVE TO AMEND.  If Gardner choses to file an amended complaint, he must do so within thirty (30) days of this order.

**IT IS SO ORDERED.**

Dated: June 6, 2014

JOSEPH C. SPERO
United States Magistrate Judge